**RLR, a Minor, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. 1156.

Supreme Court of Alaska.

July 9, 1971.

R. Collin Middleton, Asst. Public Defender, Ketchikan, for appellant.

G. Kent Edwards, Atty. Gen., Juneau, Robert Mahoney, Asst. Atty. Gen., Anchorage, Stephen Cooper, Dist. Atty., Fairbanks, for appellee.

## OPINION

Before BONEY, C. J., and DIMOND, RABINOWITZ, CONNOR and ERWIN, JJ.

RABINOWITZ, Justice.

This appeal raises significant issues regarding the constitutional rights of a child to a public jury trial, as well as the application and proper construction of several of our Rules of Children's Procedure.

A probation officer for the Division of Corrections, Department of Health and Welfare, filed a petition alleging that RLR, a person under 18 years old, had unlawfully sold lysergic acid diethylamide (LSD) to Joseph Want on or about December 11, 1968, and praying that RLR be adjudicated a delinquent. RLR denied the allegations. Initially, a hearing was held to perpetuate the testimony of one William J. Gowans, a chemist employed by the United States Department of Justice. RLR was not present at this proceeding, although his attorney was present. Gowans testified that a substance he had received from the Fairbanks police department was, in his opinion, LSD.

At a full adjudicative hearing with RLR present, Joseph W. Want, apparently a part-time secret informer for the Fairbanks police department, testified that he had purchased "a hit" from RLR at a pool hall on December 11 or 12, 1968, and had given the tablet to a police officer. Paul W. Tannenbaum, a Fairbanks police officer, testified that he had given Want money to buy drugs and several hours later Want had given him the tablet Gowans identified as LSD. RLR testified that he had been in school at the time the alleged sale was made, and did not sell LSD to Want. The court found that the allegations of the petition had been proved and adjudicated RLR a delinquent. At the disposition hearing, which was presided over by a judge other than the one who presided at the adjudicative hearing, the court decided to continue custody in the Division of Corrections, Department of Health and Welfare, for an indefinite time up to RLR's 21st birthday, on the understanding that he was to be boarded at a ranch south of Fairbanks on a trial basis. One week later a formal disposition order was entered in which it was ordered that the Department of Health and Welfare have custody of RLR and authority to place him in a foster home, detention home, or other facility without further application to the court. This appeal followed.

## CHILD'S RIGHT TO A JURY TRIAL

Appellant argues that he was denied his constitutional right to jury trial. This contention presents important and difficult problems.

Under AS 47.10.070, all children's hearings are without a jury.[1] The central issue is whether this statute is unconstitutional in the context of this case. The United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury * * *."[2] The Alaska

1. AS 47.10.070 provides in part: "All hearings under this chapter are without a jury * * *."

2. U.S.Const. amend. VI. This provision applies to state as well as federal prose-cutions. Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968).

Constitution provides that "[i]n all criminal prosecutions, the accused shall have the right to a speedy and public trial, by an impartial jury * * *." [3] Both constitutions also provide that no person shall be deprived of liberty "without due process of law." [4] The United States Constitution further provides that "[n]o State shall * * * deny to any person within its jurisdiction the equal protection of the laws," [5] and the Alaska Constitution provides that "all persons are equal and entitled to equal rights, opportunities, and protection under the law * * *." [6]

Until recently, the United States Supreme Court has avoided deciding the federal constitutional issue. [7] Several courts have found denial of jury trial for juveniles unconstitutional. Nieves v. United States [8] holds the Federal Juvenile Delinquency Act unconstitutional insofar as it bars jury trial, reasoning that In re Gault [9] treated juvenile delinquency proceedings as criminal prosecutions for purposes of the privilege against self-incrimination, so they must be criminal prosecutions for purposes of the right to jury trial. In re Rindell [10] holds that denial of jury trial violates the Sixth Amendment because a delinquency proceeding metes out punishment on account of crime, regardless of labels, so amounts to a criminal prosecution.

Other courts have upheld the constitutionality of denial of jury trial. In re D [11] holds that the federal constitution does not require jury trial, apparently because *Gault* did not say so and jury trial would be undesirable. State v. Turner [12] holds against jury trial, apparently on the ground that the issue in a juvenile proceeding is the child's best interest rather than his guilt. Dryden v. Commonwealth [13] holds that, although "mere logic" [14] applied to *Gault* and the consequences of a delinquency adjudication would seem to require jury trial, jury trial may be dispensed with because it would be poor social policy so it is not constitutionally required. In re Fucini [15] upholds denial of jury trial because the elements of procedural protection essential for achieving justice for the child without unduly impairing the juvenile court's distinctive values do not include it. This list of cases is far from complete, and many more jurisdictions have upheld denial of jury trial than have treated denial of jury trial as unconstitutional.

The cases denying a right to jury trial generally were based on two premises which we think are inadequate. One premise was that the Supreme Court of the United States had not yet ruled upon the subject. The second premise was that the benevolent social theory supposedly underlying juvenile court acts justifies dispensing with constitutional safeguards. This theory, based on the assumption that the special features of juvenile court procedure lead to less recidivism than ordinary adult criminal proceedings, has not been support-

---

3. Alaska Const. art. I, sec. 11.

4. U.S.Const. amend. V; U.S.Const. amend. XIV, sec. 1; Alaska Const. art. I, sec. 7.

5. U.S.Const. amend. XIV, sec. 1.

6. Alaska Const. art. I, sec. 1.

7. *See* McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (June 21, 1971); De Backer v. Brainard, 396 U.S. 28, 90 S.Ct. 163, 24 L.Ed.2d 148 (1969); In re Whittington, 391 U.S. 341, 88 S.Ct. 1507, 20 L.Ed.2d 625 (1968).

8. 280 F.Supp. 994, 1003–1006 (S.D.N.Y. 1968).

9. 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

10. 36 U.S.L.W. 2468 (R.I.Fam.Ct.1968). *See also* In re McCloud, 8 Crim.L.Rep. 2340 (R.I.Fam.Ct.1971). *See also* Arwood v. Tennessee, 463 S.W.2d 943 (Tenn.App.1970).

11. 27 N.Y.2d 90, 313 N.Y.S.2d 704, 261 N.E.2d 627 (1970).

12. 253 Or. 235, 453 P.2d 910 (1969).

13. 435 S.W.2d 457 (Ky.1968).

14. *Id.* at 461.

15. 44 Ill.2d 305, 255 N.E.2d 380 (1970).

ed with empirical evidence,[16] but even if it is true, this theory does not justify deprivation of constitutional rights. Earlier in this century Justice Holmes criticized the view that a then popular theory of economics justified ruling much state regulation unconstitutional.[17] Today social theory again seems to be displacing the Constitution in some courts, this time to justify excessive rather than insufficient deference to legislation concerning juvenile procedure. We agree with Justice Douglas that

> [w]hether a jury trial is in conflict with the juvenile court's underlying philosophy is irrelevant, for the Constitution is the Supreme Law of the land.
>
> * * * The balancing of the rehabilitative purpose of the juvenile proceeding and the due process requirement of a jury trial is a matter for a future Constitutional Convention.[18]

If an honest analysis of constitutional requirements leads us to believe that they apply to children, we lack authority to withhold their application in deference to a popular social theory.[19]

In re Gault[20] holds that the Due Process Clause of the Fourteenth Amendment applies when a child is charged with misconduct for which he may be incarcerated in an institution, regardless of the labels of the adjudication and institution, so the child is entitled to notice of charges, counsel, confrontation and cross-examination, and the privilege against self-incrimination. Duncan v. Louisiana[21] and Bloom v. Illinois[22] hold that the Fourteenth Amendment Due Process Clause guarantees the right to jury trial in serious criminal prosecutions in the states. *Bloom* holds that criminal contempt is a crime for this purpose because it is "a public wrong which is punishable by fine or imprisonment or both,"[23] and because the dangers of trial without jury apply in criminal contempt cases.[24]

An adjudication of delinquency could result in RLR's incarceration. *Gault* holds that regardless of benevolent-sounding labels, incarceration, when applied to children, is a taking of liberty under the Fourteenth Amendment. Our society uses incarceration for rehabilitative purposes with adult criminals as well as juvenile delinquents,[25] yet none suggest that our benevolent purposes justify deprivation of rights applicable to adult prosecutions. The sale of LSD, with which RLR was charged, is clearly "a public wrong which is punishable by fine or imprisonment," the definition of

---

16. In re Gault, 387 U.S. 1, 21–27, 87 S.Ct. 1428, 1440–1444, 18 L.Ed.2d 527, 542–546 (1967) ; Note, Juvenile Delinquents: The Police, State Courts and Individualized Justice, 79 Harv.L.Rev. 775, 807–810 (1966).

17. Lochner v. New York, 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905).

18. De Backer v. Brainard, 396 U.S. 28, 35–38, 90 S.Ct. 163, 167–169, 24 L.Ed.2d 148, 156–157 (1969) (Douglas J., dissenting).

19. The rhetoric of benevolence favored by juvenile court advocates calls to mind Justice Brandeis' teaching in Olmstead v. United States, 277 U.S. 438, 479, 48 S.Ct. 564, 572, 72 L.Ed. 944, 957 (1928) (dissenting opinion),

 Experience should teach us to be most on our guard to protect liberty when the government's purposes are beneficent. Men born to freedom are naturally alert to repel invasion of their liberty by evil-minded rulers. The greatest dangers to liberty lurk in insidious encroachment by men of zeal, well-meaning, but without understanding. (footnote omitted)

20. 387 U.S. 1, 27–31, 87 S.Ct. 1428, 1443–1446, 18 L.Ed.2d 527, 546–548 (1967).

21. 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).

22. 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968).

23. *Id.* at 201, 88 S.Ct. at 1481, 20 L.Ed. 2d at 528.

24. *Id.* at 202–208, 88 S.Ct. at 1482–1486, 20 L.Ed.2d at 529–532.

25. Alaska Const. art. I, sec. 12; State v. Chaney, 477 P.2d 441, 444 (Alaska 1970) ; Waters v. State, 483 P.2d 199 (Alaska 1971).

crime used by *Bloom* for purposes of determining the scope of the right to jury trial.

■ The purposes of the right to jury trial, discussed in *Duncan*, such as protection "against the corrupt or overzealous prosecutor and against the complaint, biased, or eccentric judge,"[26] apply as much in children's cases as in adults' cases. *Bloom* suggests that where the reasons for the right to jury trial apply, the right inheres. Just as *Bloom* holds in a contempt case that "considerations of efficiency must give way to the more fundamental interest of ensuring the even-handed exercise of judicial power," so we must hold with respect to children's cases.[27] Because RLR could be incarcerated for many years for sale of LSD, and the sale of LSD is regarded with a high degree of moral opprobrium, his alleged conduct was sufficiently serious to require the right to jury trial under *Duncan* and *Bloom*. Since we conclude that RLR was entitled to a public

jury trial under Alaska's constitutional guarantee, we need not pass upon the federal constitutional question.

■ We think that the state constitutional question is answered by Baker v. City of Fairbanks.[28] There we held that the right to jury trial is coextensive with the right to counsel,[29] and the right to counsel extends to children charged with delinquency. Since that case expressly holds that contemporary social values rather than historical categorizations determine whether a prosecution is criminal for purposes of the right to jury trial,[30] the Alaska constitutional guarantee does not exclude delinquency proceedings because they were carried on without juries at the time the Alaska Constitution was ratified.[31] *Baker* defines the category of "criminal" prosecutions under the Alaska constitutional jury trial guarantee to include "any offense a direct penalty for which may be incarceration in a jail or penal institution."[32] RLR's conduct was certainly an "offense";

26. Duncan v. Louisiana, 391 U.S. 145, 156, 88 S.Ct. 1444, 1451, 20 L.Ed.2d 491, 500 (1968).

27. Bloom v. Illinois, 391 U.S. 194, 209, 88 S.Ct. 1477, 1486, 20 L.Ed.2d 522, 533 (1968) In this regard, one commentator states:

(footnotes omitted).

The parallel between a criminal contempt proceeding and a delinquency proceeding in which a juvenile is accused of an offense that would entitle his adult counterpart to a trial by jury, creates a compelling analogy. Both charges have all the elements of a criminal offense, yet in each the accused has traditionally been denied access to a jury trial. A conviction of either of the above offenses will result in a substantial deprivation of liberty; this possibility being even greater in a juvenile proceeding where it is rare that the period of incarceration is less than three years. The presence of these two factors in *Bloom*, (1) a charge having all the indicia of a crime and (2) a possible deprivation of liberty for a substantial period, led the *Bloom* Court to the conclusion that denial of a jury trial in a criminal contempt proceeding can no longer be justified. This same

type reasoning should also apply to juveniles.

Therefore, reading *Duncan* and *Bloom* together, it becomes apparent that the right to a jury trial in both delinquency and criminal contempt proceedings, even though traditionally denied, should depend not on the name of the proceeding or the nature of the alleged offense but upon the possibility of a loss of liberty for a substantial period of time.

T. Foley, Juveniles and Their Right to a Jury Trial, 15 Villanova L.Rev. 972, 984 (1970).

28. 471 P.2d 386 (Alaska 1970). *Compare* our recent decision in State v. Browder, 486 P.2d 925 (Alaska, July 1, 1971), where in reliance upon *Baker* we construed Alaska's constitutional guarantee of the right to jury trial as encompassing cases of direct criminal contempt. In so doing, we rejected *Bloom's* serious-petty contempt distinction as determinative of whether the contemnor has a right to jury trial.

29. *Id.* at 395.

30. *Id.* at 396.

31. SLA 1945, ch. 60, sec. 1, then codified as ACLA sec. 51–3–10 (1949).

32. Baker v. City of Fairbanks, 471 P.2d 386, 402 (1970).

RLR is a "delinquent minor" under AS 47.10.290(2) because the sale of LSD is a crime under AS 17.12.010. The moral opprobrium attached to sale of LSD is shown by the penalty, up to 25 years imprisonment and a $20,000 fine for the first offense, and up to life imprisonment and a $25,000 fine for subsequent offenses or for the first offense if the sale is to a person under 19.[33] A child adjudicated delinquent for selling LSD may be incarcerated until age 19, which may be many years, possibly even in a city jail.[34] Considering the stigma and penalties attached and the purposes of the constitutional guarantee, treating the adjudicative phase of a delinquency proceeding for sale of LSD differently from an ordinary adult criminal prosecution for purposes of the right to jury trial would be a cynical and unprincipled refusal to obey the Alaska constitution. We hold that whenever a child in a delinquency proceeding is charged with acts which would be a crime, subject to incarceration if committed by an adult, the Alaska Constitution guarantees him the right to jury trial.[35]

Our holding on the right to jury trial leaves several questions open. One question is whether the jury list must include persons at least as young as the child. It could be argued that young persons are a distinct class and may not be excluded from jury service without depriving young persons charged with misconduct equal protection or due process of law; such an argument might compare young persons to racial minorities. On the other hand, it could be argued that the constitutional right to an "impartial"[36] jury requires, and that

due process and equal protection requirements permit, states to impose age requirements for jury service to guarantee sufficient maturity and freedom from parental and other pressure for fairness and impartiality. Since this issue is not argued in the case at bar, we do not decide this point. A second lurking issue is whether the right to jury trial should be retroactive. Considerations in favor of retroactivity include the fundamental character of the right and the purpose to be served by it, primarily avoiding convicting the innocent rather than, as in search and seizure cases, deterrence of police misconduct. Considerations against retroactivity include reliance of children's court judges on the statute rejected in this case. This issue, too, we leave for a future case in which it is necessary to decide it.

A third and exceedingly complicated issue is whether, and how, a child may waive his right to trial by jury. *Gault* seems to assume that a child may waive his rights to notice, counsel, and the privilege against self-incrimination, but does not examine these matters in any depth.[37] In Hammonds v. State, we held that "[a] waiver is an intentional relinquishment of a known right or privilege," which is "knowingly and intelligently" made.[38]

One view treats infants as incompetent to waive rights, and requires that a guardian ad litem make all waivers, or at least that they be on the advice of some "friendly adult."[39] Another view treats youth as one of many factors to be considered in determining whether, in the "totality of circumstances," the right was known and the

33. AS 17.12.110(b).

34. AS 47.10.080(b) (1).

35. To the extent In re White, 445 P.2d 813 (Alaska 1968), is inconsistent with this opinion, it is overruled. Implicit in our holding is that AS 47.10.070 is unconstitutional insofar as it denies the right to a jury trial to the child in the adjudicative phase of the delinquency proceeding.

36. U.S. Const. amend. VI; Alaska Const. art. I, sec. 11.

37. In re Gault, 387 U.S. 1, 34 n. 54, 41–42, 55, 87 S.Ct. 1428, 1447 n. 54, 1451–1452, 18 L.Ed.2d 527, 550 n. 54, 554, 561 (1967).

38. 442 P.2d 39, 42 (Alaska 1968).

39. In re Dobson, 125 Vt. 165, 212 A.2d 620 (1965); Note, Waiver in the Juvenile Court, 68 Colum.L.Rev. 1149, 1162 (1968); People v. Lara, 67 Cal.2d 365, 62 Cal.Rptr. 586, 607, 432 P.2d 202, 223 (1967) (Peters, J., dissenting); United States ex rel. B. v. Shelly, 305 F.Supp.

decision not to assert it was intentional and intelligently made.[40] In this opinion we treat only waiver of a right at trial when the child is represented by an attorney, not waiver of the right to counsel or pretrial waivers.

We must first dispose of the argument that infancy renders all waivers automatically void. Our statute governing the age of majority, AS 25.20.010, provides that upon reaching majority a person

> has control of his own actions and business and has all the rights and is subject to all the liabilities of citizens of full age, except as otherwise provided by statute.

This statute does not carry a broad negative implication. An infant is liable civilly for his torts and in children's court for his crimes; he may hold property, exercise constitutional rights, if he is at least 14 years old, nominate his general guardian [41] and consent to his adoption,[42] and make contracts binding on his promisee though voidable by the infant. The age of majority can be reduced to sixteen for a girl if she lawfully marries, or to an earlier age if she is pregnant when she marries.[43] The age of majority statute does not imply a legislative judgment that infants are incompetent in all things; it means only that persons above the statutory age minimum are competent in all things except as otherwise provided. No statute prohibits waivers by infants of procedural rights in children's court, so the issue is one of common law and constitutional law.

We think the *Hammonds* tests of waiver, quoted above, apply to infants as well as adults. The consequences of application will differ for infants, because some decisions can be "knowingly and intelligently" made only by persons of fuller knowledge and maturity. An infant not advised by an attorney could make few knowledgeable and intelligent decisions about whether to waive rights in judicial proceedings. On the other hand, in areas where an adult ordinarily delegates to his attorney decision-making authority, as in deciding whether to object to introduction of evidence, the competence of the attorney rather than of the client generally determines whether waivers satisfy the *Hammonds* criteria.

Waiver of the right to jury trial is more complicated than, say, waiver of a hearsay objection because an attorney will generally consult with his client on whether to have a jury, and in some cases an infant may express desires conflicting with his interests on jury trial. Some commentators suggest that an infant might prefer a jury out of a desire to display his importance without sufficient attention to the possibility of future harm through notoriety or the relative likelihood of winning before judge and jury.[44] Where this danger seems substantial, the court should appoint a guardian ad litem pursuant to Children's Rule 11(a) and AS 47.10.050, who should consult with the child and his attorney and make a decision based solely on the interests of the child.

55 (E.D.N.Y.1969), modified on other grounds, 430 F.2d 215 (2nd Cir. 1970); Felder v. State, 463 S.W.2d 272 (Tex. Civ.App. 1971); State ex rel. Byrnes v. Goldman, 59 Misc.2d 570, 302 N.Y.S.2d 926 (N.Y.Sup.Ct.1969).

40. People v. Lara, 67 Cal.2d 365, 62 Cal. Rptr. 586, 432 P.2d 202 (1967); Williams v. Huff, 79 U.S.App.D.C. 31, 142 F.2d 91 (1944); Application of Estrada, 1 Ariz.App. 348, 403 P.2d 1 (1965); Bouldin v. Cox, 76 N.M. 93, 412 P.2d 392, 396 (1966); In re H.L.R., 269 Cal.App. 2d 610, 75 Cal.Rptr. 308, 311–312 (1969);

Note, Waiver of Constitutional Rights by Minors: A Question of Law or Tort?, 19 Hastings L.J. 223 (1967).

41. AS 20.05.030.

42. AS 20.10.020(1).

43. AS 25.20.020; AS 25.05.171.

44. Note, Waiver in the Juvenile Court, 68 Colum.L.Rev. 1149, 1165–66 (1968); compare Note, Juvenile Delinquents: The Police, State Courts, and Individualized Justice, 79 Harv.L.Rev. 775, 793–794 (1966).

■ The guardian ad litem procedure also has its dangers, and should not be used unnecessarily. If the child's attorney is appointed, he may be unsure where his advocate's role ends and his role of judging his ward's best interests begins.[45] If a parent is considered for appointment, careful judicial scrutiny is needed to assure no conflict of interest between the parent's duty to advance his child's interests and his own desire to use the court in order to discipline the child, and to assure adequate knowledge of the consequences of his decisions.[46]

■ We therefore hold that children are constitutionally entitled to jury trial in the adjudicative stage of a delinquency proceeding. However, due to the uniqueness of some facets of the procedures governing children's court proceedings and the potential damage which may accrue to the child by a public trial, we think the child should first consult with his counsel and his parents or guardian when appropriate, and then affirmatively assert the right to a trial by jury before it is finally granted.[47] Accordingly, we think that Children's Rule 1(d) incorporates Civil Rule 38 insofar as it is applicable rather than Criminal Rule 23(a). This means that if the child waives jury trial, the state may not require it, but jury trial shall be provided only on demand. Since we find that the case must be reversed on other grounds, we do not decide whether the denial of a jury trial in the adjudicative stage in the case at bar was plain error.[48]

## PUBLIC TRIAL

The Federal[49] and Alaska's[50] Constitutions provide that "[i]n all criminal prosecutions, the accused shall enjoy ["have" in Alaska's Constitution] the right to a * * public trial * * *." The sentence guaranteeing the right also guarantees the rights to speedy trial and an impartial jury. The leading case on public trial, Re Oliver,[51] holds that the Due Process Clause of the Fourteenth Amendment prohibits secret trials in criminal proceedings. *Oliver* says that the traditional Anglo-American distrust for secret trials has been attributed to the despotism of the Spanish Inquisition, the English Court of Star Chamber, and the French lettre de cachet, and quotes Bentham's charge that secret proceedings produce "indolent and arbitrary" judges, un-

45. Note, Waiver in the Juvenile Court, 68 Colum.L.Rev. 1149, 1161–1162 (1968).

46. *Id.* at 1159.
 In 1969, more girls were referred to Children's Court in the Third Judicial District for running away from home than for any other reason, and habitual disobedience to parents was the third most frequent cause, after running away and violating probation. These were also among the most frequent bases for referrals among boys. J. Warner, Survey of Children in a Delinquent Setting—Referral and Jurisdiction 1969, at 10–11 (undated). In such cases, parents are in effect the complainants or "victims" of their children's wrongful conduct.

47. Note, Waiver in the Juvenile Court, 68 Colum.L.Rev. 1149, 1165 (1968).

48. Rules of Children's Procedure 1(d) provides:
 *Situations Not Covered by Rule.* Where no specific procedure is prescribed by these rules, the court may proceed in any lawful manner, not inconsistent with children's statutes or these rules, which appears most likely to achieve the aims and purposes of such statutes and these rules.
 Civ.R. 38(b) provides:
 *Demand.* Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue. Such demand shall be made in a separate written document signed by the party making the demand or by his attorney.
 Crim.R. 23(a) provides:
 *Trial by Jury.* Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the consent of the state.

49. U.S.Const. amend. VI.

50. Alaska Const., art. I, sec. 11.

51. 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948).

checked no matter how "corrupt" by recordation and appeal.[52] The court cites as values of a public trial that it safeguards against attempts to employ the courts as instruments of persecution, restrains abuse of judicial power, brings the proceedings to the attention of key witnesses not known to the parties, and teaches the spectators about their government and gives them confidence in their judicial remedies.[53] In a concurring opinion in Estes v. Texas,[54] Justice Harlan says that

[e]ssentially, the public-trial guarantee embodies a view of human nature, true as a general rule, that judges, lawyers, witnesses, and jurors will perform their respective functions more responsibly in an open court than in secret proceedings. * * * A fair trial is the objective, and 'public trial' is an institutional safeguard for attaining it.

Thus the right of 'public trial' is not one belonging to the public, but one belonging to the accused, and inhering in the institutional process by which justice is administered.[55]

Appellant argues that he was denied his constitutional right to a public trial by AS 47.10.070. That statute provides in relevant part that

[t]he public shall be excluded from the hearing, but the court, in its discretion, may permit individuals to attend a hearing, if their attendance is compatible with the best interest of the minor.

Rules of Children's Procedure 12(d) (2) provides that

[c]hild hearings shall not be open to the general public. The court may, however, in its discretion after due consideration for the welfare of the child and of the public interest, admit particular individuals to the hearing.

The federal constitutional guarantee has not been construed to mean that all judicial proceedings must be open to any interested member of the public at any time. Some authorities hold that the right to public trial belongs to the public as well as the defendant so public trial is not subject to defendant's waiver,[56] while others hold that the guarantee is for the benefit of the accused, and may be asserted or waived only by him.[57] In both the federal and Alaska's constitutions, the right to public trial is part of a list of rights explicitly stated to be rights of the accused. Some jurisdictions hold that the general public may be excluded consistently with the public trial guarantee so long as the defendant has an opportunity to designate those whom he desires to have present.[58] Others take the view that the general public cannot be excluded in this way.[59] Where the right has been denied, no prejudice need be shown, since such a showing would be almost impossible to

---

52. *Id.* at 271, 68 S.Ct. at 506, 92 L.Ed. at 693.

53. *Id.* at 270, 68 S.Ct. at 506, 92 L.Ed. at 692.

54. 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965).

55. *Id.* at 588, 85 S.Ct. at 1662, 14 L.Ed.2d 583–584.

56. 2 Cooley, Constitutional Limitations 931–32 (Carrington ed. 1927), quoted with approval in Estes v. Texas, 381 U.S. 532, 542, 85 S.Ct. 1628, 1632, 14 L.Ed. 2d 543, 550 (1965) ; E. W. Scripps Co. v. Fulton, 100 Ohio App. 157, 125 N.E.2d 896, appeal dismissed, 164 Ohio St. 261, 130 N.E.2d 701 (1955) (based in part on state constitutional provisions that "[a]ll courts shall be open") ; Kirstowsky v. Superior Court, 143 Cal.App.2d 745, 300 P.2d 163 (1956) ; State v. Keeler, 52 Mont. 205, 156 P. 1080 (1916) ; Annot., 48 A.L.R.2d 1436 (1956).

57. Estes v. Texas, 381 U.S. 532, 588, 85 S.Ct. 1628, 1662, 14 L.Ed.2d 543, 584 (1965) (Harlan, J., concurring) ; United Press Ass'ns v. Valente, 308 N.Y. 71, 81, 123 N.E.2d 777, 781 (1954) ; Geise v. United States, 265 F.2d 659 (9th Cir.), cert. denied, 361 U.S. 842, 80 S.Ct. 94, 4 L.Ed.2d 80 (1959).

58. State v. Nyhus, 19 N.D. 326, 124 N.W. 71 (1909).

59. United States v. Kobli, 172 F.2d 919 (3d Cir. 1949) ; Wade v. State, 207 Ala. 1, 92 So. 101 (1921) ; People v. Jelke, 308 N.Y. 56, 123 N.E.2d 769 (1954) ; Davis v. United States, 247 F. 394 (8th Cir. 1917).

make.[60] The right may be waived.[61] We held in Flores v. State [62] that unintentional brief exclusion of a newspaper reporter from part of the reading back to the jury of a section of testimony previously given, when at least one other spectator was present, did not deny the right to public trial.

In re Burrus [63] holds that despite *Gault*, juveniles are not constitutionally entitled to public trial. It is weak authority, however, since it so concludes merely by labeling delinquency proceedings non-criminal, rather than by analyzing the purposes of the public trial requirement to see whether they would be served by applying the right to delinquency proceedings. Many authorities favor a policy in delinquency proceedings of avoiding total secrecy by admitting persons with a special interest in the case or the work of the court, including perhaps the press, but prohibiting disclosure of juveniles' names and excluding the general public.[64] Various reasons are given for this policy. It is said that permitting an audience to attend the hearing would interfere with the "case work relationship" between the judge and the child. Publicity is condemned on the grounds that it is an additional and excessive punishment to that prescribed by the court, or in the alternative

that it encourages delinquency by permitting a youngster to "flaunt his unregeneracy." [65] Publication of names of juvenile delinquents is condemned on the ground that it confirms the child in his delinquent identity and impedes his integration into law-abiding society by reducing his ability to obtain legitimate employment, qualify for licenses and bonds, and join the armed services.[66] An important commentator on this subject recommends that the general public be excluded from juvenile hearings, but that the press should be admitted, though prohibited from publishing data which would identify particular juveniles; if he so desires, however, the juvenile should have a public hearing.[67] These social policy considerations are based on empirical propositions which may be false and have not been tested.[68] Some commentary favors open court proceedings for juveniles on the grounds that secrecy and the informality engendered thereby hinders rehabilitation partly by misleading juveniles and their parents into underestimating the seriousness of delinquency.[69] Recent commentary tends to be critical of secrecy because it screens from public view arbitrariness and lawlessness by juvenile courts.[70]

---

60. United States v. Kobli, 172 F.2d 919 (3d Cir. 1949); Tanksley v. United States, 145 F.2d 58, 10 Alaska 443 (9th Cir. 1944).

61. Dutton v. State, 123 Md. 373, 91 A. 417 (1914); State v. Hensley, 75 Ohio St. 255, 79 N.E. 462 (1906).

62. 475 P.2d 37, 39 (Alaska 1970).

63. 275 N.C. 517, 169 S.E.2d 879 (1969).

64. Children's Bureau, Standards of Juvenile and Family Courts 76–77 (1966); Children's Bureau, Legislative Guide for Drafting Family and Juvenile Court Acts sec. 29(c), at 30 (1969); New Jersey Juv. & Dom.Rel.Ct. Rule 5:9–1(a) (1969).

65. President's Commission on Law Enforcement and Administration of Justice, Task Force Report: Juvenile Delinquency and Youth Crime 38 (1967).

66. *Id.* at 38–39.

67. Geis, Publicity and Juvenile Court Proceedings, 30 Rocky Mt. L.Rev. 101, 125–

26 (1958); *see also* Geis, In Re: Juvenile Court Publicity, 16 Juv.Ct.Judges J. 12 (1965), reprinted in O. Ketcham & M. Paulsen, Cases and Materials Relating to Juvenile Courts 407 (1967).

68. Geis, Publicity and Juvenile Court Proceedings, 30 Rocky Mt.L.Rev. 101, 124 (1958).

69. Parker, Instant Maturation for the Post-Gault "Hood", 4 Fam.L.Q. 113 (1970). *See also* Handler, The Juvenile Court and the Adversary System: Problems of Function and Form, 1965 Wisc.L. Rev. 7, 19–21 (1965). Handler argues that the high degree of informality in juvenile court interferes with rehabilitation by producing in the juvenile frustration, distrust, contempt, fear, and cynicism. "The word 'help,' coming from such a person in a position of power, is, in the mind of the adolescent, a familiar signal of danger." Handler at 21.

70. Note, Minnesota Juvenile Court Rules: Brightening One World for Juveniles, 54

Just as alleged, bad motives of the legislature cannot be considered in determining constitutionality and construction of statutes, so we cannot withhold application of federal and state constitutional provisions on the grounds that those who created various systems of governmental activity such as the juvenile court acted from benevolent motives. Nor will constitutional problems be ignored in deference to untested empirical propositions about what sorts of judicial proceedings succeed in rehabilitating persons charged with misconduct; as between these sorts of prescriptions for what is good for society and constitutional prescriptions, the latter are authoritative. The reasons for the constitutional guarantees of public trial apply as much to juvenile delinquency proceedings as to adult criminal proceedings.[71] Delinquency proceedings as much as adult criminal prosecutions can be used as instruments of persecution, and may be subject to judicial abuse. The appellate process is not a sufficient check on juvenile courts, for problems of mootness and the cost of prosecuting an appeal screen most of what goes on from appellate court scrutiny. We cannot help but notice that the children's cases appealed to this court have often shown much more extensive and fundamental error than is generally found in adult criminal cases,[72] and wonder whether secrecy is not fostering a judicial attitude of casualness toward the law in children's proceedings. In any event,

civil labels and good intentions do not themselves obviate the need for criminal due process safeguards in juvenile courts, for '[a] proceeding where the issue is whether the child will be found to be "delinquent" and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution.' [73]

■ Therefore, we hold that children are guaranteed the right to a public trial by the Alaska Constitution.

■ One additional facet of the child's right to a public trial remains to be considered. AS 47.10.070,[74] and the similar Children's Rule 12(d) (2), provide for the exclusion of the public from children's hearings. Rules of Children's Procedure 12(d) (2), which governs, provides that,

Child hearings shall not be open to the general public. The court may, however, in its discretion after due consideration

Minn.L.Rev. 303, 324–325 (1969); Note, Criminal Offenders in the Juvenile Court: More Brickbats and Another Proposal, 114 U.Pa.L.Rev. 1171, 1185–1186 (1966).

71. Some of these reasons parallel those underlying the constitutional guarantees of jury trial. In one commentator's view, the jury provides the citizenry, in their capacity as jurors, with a vehicle to directly participate in government; that the jury system induces public confidence in the administration of justice; and that the jury system helps to insure the independence and the quality of the judges. Foley, Juveniles and Their Right to a Jury Trial, 15 Villanova L.Rev. 972 (1970).

72. E. g., the case at bar, In re G. M. B., 483 P.2d 1006 (Alaska 1971), and E. J. v. State, 471 P.2d 367 (Alaska 1970).

73. In re Winship, 397 U.S. 358, 365–366, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 376 (1970).

74. AS 47.10.070 provides in part that:
The public shall be excluded from the hearing, but the court, in its discretion, may permit individuals to attend a hearing, if their attendance is compatible with the best interests of the minor.
The statute providing for exclusion of the public from juvenile hearings is procedural, so is outside the scope of legislative authority unless two-thirds of each house of the legislature votes to change the rule promulgated by the supreme court in this matter. Alaska Const. art. IV, sec. 15. Children's proceedings are among the "civil and criminal cases in all courts" over which this constitutional provision gives this court rule-making authority which is intended to be plenary and not capable of reduction by re-labelling of proceedings. Cf. Silverton v. Marler, 389 P.2d 3 (Alaska 1964).
The statute making criminal the publication by newspapers, radio stations, and television stations of juvenile delinquents' names, AS 47.10.090(b), and the similar rule, Rules of Children's Procedure 26, are not challenged in this appeal.

for the welfare of the child and of the public interest, admit particular individuals to the hearing.

This flexible rule must be interpreted and applied in a manner consistent with the child's constitutional right to public trial. The evils of secrecy may be avoided by permitting the child to open the adjudicative and dispositive hearings to any individuals. Where the child's choice may be adverse to his own interests, a guardian ad litem may be appointed under the principles discussed in the preceding section dealing with the right to trial by jury. It is an abuse of discretion for the court to refuse admittance to individuals whose presence is favored by the child, except in special circumstances such as the unavailability of a courtroom sufficiently large to hold all the individuals whose presence is sought. If the child or his guardian ad litem wants the press, friends, or others to be free to attend, then the hearing must be open to them. The area of discretion in the rule, where the court may refuse to open the hearing, involves persons whose presence is not desired by the child. Since we have determined that the case must be reversed on other grounds, we find it unnecessary to decide whether the denial of a public trial in the adjudicative stage in the case at bar was plain error.

## SERVICE OF PROCESS

Appellant specifies as error the failure to serve him with a copy of the petition. Because of this noncompliance with Children's Rule 10, he contends the court lacked jurisdiction over his person. The returns of service show that various persons purported to have served RLR by handing copies of the summons and petition to Ross Ward of the Division of Corrections on March 21, to RLR's mother on March 25, and by handing a copy of the summons to RLR on April 9. The summons was a reproduced form saying that a copy of the petition was attached, but on it was typed "Note Previously Received Petition," indicating that no petition was attached. RLR appeared in court April 1 to be told of the contents of the petition and of his right to counsel, April 3 to deny the charges, and May 2 for a hearing on the merits.

Under Children's Rule 10, the summons in a children's matter must have attached a copy of the petition [75] and must be directed to the child as well as his parents or guardian, custodian, and guardian ad litem if appointed.[76] Children's Rule 10 is vague on the manner of personal service; it provides that process should be served "by a person authorized to effect service under [Civil] Rule 4(c), Rules of Civil Procedure," [77] but does not state what that person should do.

75. Rules of Children's Procedure 10(b) reads:

> *Contents of the Summons.* The summons shall require the person to whom it is directed to appear for hearing at a time and place specified by the court therein. It shall contain a statement that the juvenile, as well as his parents, guardian, or custodian, have the right to be represented by counsel. A copy of the petition shall be attached to and be incorporated by reference in the summons. In cases where the proceedings could result in the termination of parental rights and the juvenile might be committed to the Department of Health and Welfare for adoption, such possibilities shall be stated. If, after service of summons, it shall appear to the court at any stage of the proceedings that termination of parental rights, not previ-

ously considered a possibility and so stated in the summons, may become a possibility, the court shall order an appropriate amendment of the petition and re-summon the appropriate party or parties.

76. Rules of Children's Procedure 10(c) provides:

> *Persons to Whom Directed.* The summons shall be directed to the following persons:
> (1) The juvenile.
> (2) The parents or guardian of the juvenile.
> (3) Any actual custodian of the juvenile.
> (4) A guardian ad litem, where one has been appointed under these rules.

77. Rules of Children's Procedure 10(f) (1).

Appellee argues that under AS 47.10.030 (a), service on RLR's mother sufficed. That section provides in part that:

[a]fter a petition is filed and after further investigation which the court directs, if the person having custody or control of the minor has not appeared voluntarily, the court shall issue a summons which * * * (3) directs the person having custody or control of the minor to appear personally in court with the minor at the place and at the time set forth in the summons.

The statute does not purport to control the manner of service on children, nor to apply in any case except when "the person having custody or control of the minor has not appeared voluntarily." It requires notice to parents that their rights to custody are at stake, but does not speak to the issue of notice to the child that his liberty is at stake.

The Children's Rules provide no specific procedure for the manner of service on children. In such circumstances, Children's Rule 1(d) provides that

the court may proceed in any lawful manner, not inconsistent with children's statutes or these rules, which appears most likely to achieve the aims and purposes of such statutes and these rules.

■■■ Several constitutional requirements for providing notice in a "lawful manner" are delineated in the *Gault* case.[78] *Gault* holds that

[n]otice, to comply with due process requirements, must be given sufficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded, and it must 'set forth the alleged misconduct with particularity.'[79]

The child and his parents must receive notice which would be deemed adequate in a civil or criminal proceeding.[80] These requirements suggest that our civil and criminal rules should be looked to for techniques of service on children. Since the criminal rules have no applicable provision, we are left with Civil Rule 4(d) (2), which provides that personal service may be made on an infant in civil cases

by delivering a copy of the summons and complaint to such infant personally, and also to his father, mother or guardian, or if there be none within the state, then to any person having the care or control of such infant, or with whom he resides, or in whose service he is employed; or if any service cannot be made upon any of them, then as provided by order of the court.

This rule means that the required process must be delivered to the child himself, and that jurisdiction over the child cannot be obtained by delivering the summons and petition to his parents.[81]

This requirement is not only constitutionally required but is desirable as a matter of policy. Parents may fail to give the petition and summons to the child because they do not understand its seriousness or, especially in the large proportion of cases in which parents are the complainants, because they are hostile or indifferent to the child's interests.[82] Concerned parents might, as a disciplinary measure, refuse to show children the summons and petition and instead tell them an exaggerated, more frightening version of their contents. Even if the children learned of their court dates, they would not have a fair chance to retain counsel and prepare to meet the charges. Of course, personal service of process on extremely young children will be an empty form, but pointless service on

78. In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

79. *Id.* at 33, 87 S.Ct. at 1446, 18 L.Ed.2d, at 549 (footnote omitted).

80. *Id.*

81. Hartwell v. Cooper, 380 P.2d 591 (Alaska 1963).

82. Note, Minnesota Juvenile Court Rules: Brightening One World for Juveniles, 54 Minn.L.Rev. 303, 318 n. 81 (1969).

a few children [83] does little harm compared to absence of service on many children to whom it would be meaningful.

We hold that, since Children's Rule 10 (c) (1) requires that the summons and petition be "directed to" the child as well as his parents, and the Children's Rules are silent on the manner of service of process on children, Children's Rule 1(d) incorporates Civil Rule 4(d) (2). Process was not served on RLR in accord with these rules.

■ Appellee argues that even if process was defectively served, appellant waived the defect by appearing in court and failing to object. In *Gault*, defective notice was held not to be waived despite the child's appearance and failure to object.[84] The appearance did not waive the defect because "one of the purposes of notice is to clarify the issues to be considered," [85] so it is not enough merely to know that one must appear in court at a particular time. Failure to object did not waive the defect because the child had no counsel and was not advised of his right to counsel.[86] This latter factor distinguishes *Gault*; RLR was represented by an attorney appointed by the court on April 1. If RLR's attorney had wished to preserve

the jurisdictional issue for appeal, he could have moved to dismiss for lack of jurisdiction over the person, insufficiency of process, or insufficiency of service of process. His failure to do so may have been based on a strategic judgment that a dismissal would have led only to delay disadvantageous for his client. The defect in process, therefore, was waived by RLR's failure to raise it below.[87]

## RLR'S ABSENCE AT THE GOWANS HEARING

■ Children's Rule 12(c) (1) [88] requires that the child be present at both the adjudicative and dispositive phases of his hearing. On April 18, 1969, at 9 a. m. the court held a hearing in which William J. Gowans, a chemist, testified that a tablet sent to him for analysis contained LSD. Counsel for RLR participated, but RLR was absent. RLR's attorney said that he did not know whether or not RLR wished to waive his right to be present, apparently because RLR had not been informed that the hearing was to take place. The prosecuting attorney said that he thought a written waiver of his right to be present by RLR was needed, though he doubted that RLR would actually be prejudiced by

83. A survey of children referred in 1969 to Children's Court in the Third Judicial District of Alaska, not including dependent children, found that only 6.6% were under 12 years old. Most were over 15. J. Warner, Survey of Children In a Delinquent Setting—Referral and Jurisdiction 1969, at 7 (no date).

84. In re Gault, 387 U.S. 1, 34, 87 S.Ct. 1428, 1447, 18 L.Ed.2d 527, 550 (1967).

85. *Id.* 387 U.S. at 34 n. 54, 87 S.Ct. at 1447 n. 54, 18 L.Ed.2d at 550 n. 54.

86. *Id.* 387 U.S. at 34, 87 S.Ct. at 1447, 18 L.Ed.2d at 550.

87. Pulakis v. State, 476 P.2d 474, 479–480 (Alaska 1970). While some authorities hold that infants, even when represented by counsel, cannot waive defects in process and consent to jurisdiction over the person, Annot., 90 A.L.R.2d 293, 296–298 (1963), we think such a rule unreasonably restricts the strategic choices open to a child represented by counsel. A no-waiver

rule could be used as a delaying tactic by an unprepared prosecutor when process was not entirely correct. A child represented by competent counsel is about as fit as an adult to waive this sort of objection, whch is usually beyond the ken of adult laymen as well as children.

88. Rules of Children's Procedure 12(c) (1) provides:
*Parties Whose Presence is Required.* The presence of the following parties is required at the child hearing:
(1) The child.
(2) All persons to whom summons are required to be directed under these rules unless the court in its discretion determines that a continuance for the purpose of securing the attendance of such persons will not be productive of their attendance.
(3) The guardian ad litem, if one was appointed.
(4) Counsel for the child or other parties, if counsel was retained or was appointed.

his absence. The court nevertheless proceeded to take Gowans' testimony. The record indicates that a summons to appear on April 18 at 10 a. m., an hour after the hearing began, without an attached copy of the petition, was served on RLR on April 9.

Appellee argues that the Gowans hearing was in the nature of a deposition under Criminal Rule 15(a),[89] permitted under Children's Rule 1(d). This argument must fail because there was no notice to RLR under Criminal Rule 15(a) and 15(b) and because the supposed deposition was used as part of the adjudicative phase of the hearing without the showing required in Criminal Rule 15(e). The Criminal Rule 15(e) requirements obviously could not be complied with since the testimony was taken before the judge handling the adjudicative phase of the hearing. Alternatively, appellee argues that the violation of Children's Rule 12(c) (1) was harmless error

because RLR was not prejudiced by his absence.

■ The Children's Rules do not contain a harmless error provision, but the ordinary principles of appellate review as well as incorporation of Criminal Rule 47 (a)[90] by Children's Rule 1(d) require that we disregard error not affecting substantial rights. We see no difference in principle between the child's right to be present at his hearing and a criminal defendant's right to be present at his trial. We said in Noffke v. State[91] that violations of Criminal Rule 38, requiring the defendant's presence at all stages of a criminal trial, do not constitute reversible error unless defendant's rights are substantially prejudiced, but found substantial prejudice where a jury instruction was given in the absence of defendant and his attorney. In Kugzruk v. State,[92] this court upheld a criminal conviction despite defendant's claimed absence from several anteroom

89. Crim.R. 15(a) provides:

(a) *When and How Taken.* If it appears that a prospective witness may be unable to attend or prevented from attending a trial or hearing, that his testimony is material and that it is necessary to take his deposition in order to prevent a failure of justice, the court at any time after the filing of an indictment or information may upon motion of a defendant and notice to the parties order that his testimony be taken by deposition and that any designated books, papers, documents, or tangible objects, not privileged, be produced at the same time and place. If a witness is committed for failure to give bail to appear to testify at a trial or hearing, the court on written motion of the witness, or on its own motion, and upon notice to the parties, may direct that his deposition be taken. After the deposition has been subscribed the court may discharge the witness.

Crim.R. 15(b) provides:

(b) *Notice of Taking.* The party at whose instance a deposition is to be taken shall give to every other party reasonable written notice of the time and place for taking the deposition. The notice shall state the name and address of each person to be examined. On motion of a party upon whom the notice is served, the court for cause shown may extend or shorten the time.

Crim.R. 15(e) provides:

*Use.* At the trial or upon any hearing, a part or all of a deposition, so far as otherwise admissible under the rules of evidence, may be used if it appears:

(1) That the witness is dead;

(2) That the witness is out of the state, unless it appears that the absence of the witness was procured by the party offering the deposition; or

(3) That the witness is unable to attend or testify because of sickness or infirmity; or

(4) That the party offering the deposition has been unable to procure the attendance of the witness by subpoena.

Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of the deponent as a witness. If only a part of a deposition is offered in evidence by a party, an adverse party may require him to offer all of it which is competent and relevant to the part offered, and any party may offer other parts.

90. Crim.R. 47(a) provides:

*Harmless Error.* Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

91. 422 P.2d 102 (Alaska 1967).

92. 436 P.2d 962 (Alaska 1968).

conferences between his attorney, the prosecutor, and the judge on points of law on the grounds that the record did not show defendant's objection, or that his substantial rights were affected. Egelak v. State [93] held that a defendant was not prejudiced by his and his attorney's absence at a showing of pictures of his victim to the trial judge a few minutes before sentencing, where his attorney interrupted the showing, made no timely objection and had an opportunity to deal with the matter a few minutes after it occurred at the sentencing hearing. Gafford v. State [94] held that a criminal defendant's absence when the trial judge received and denied a request by the jury to clear the courtroom when the verdict was returned was nonprejudicial. In Speidel v. State,[95] we held that a criminal defendant's absence from a presentence conference between his attorney, the prosecutor, a probation officer, and the judge was reversible error. Rather than point to some specific aspect of prejudice, we said:

> The denial of that right must be assumed to have been prejudicial, since we cannot say with any degree of certainty that the judge may not have been influenced to impose a lesser sentence had appellant been given the opportunity to be heard and participate in the discussion relating to sentencing.[96]

We distinguished meetings between court and counsel concerning such matters as scheduling and procedural matters.[97]

We held in Brown v. State [98] that federal authorities construing Federal Rule of Criminal Procedure 43 were relevant in construing its Alaskan analogue, Criminal Rule 38, giving a criminal defendant the right to be present at all stages of his trial. There is some federal authority for the proposition that to uphold a conviction despite absence at some stage of the accused, the state must show that "the record affirmatively indicates beyond a reasonable doubt that the error did not affect the verdict," or that on matters where prejudice cannot be assessed, absence can never be treated as harmless error.[99]

Proof that the tablet allegedly sold by RLR contained LSD was an essential and contested element in the state's case. The taking of Gowans' testimony was not an anteroom conference on a point of law, but a full-scale factual hearing. RLR's absence was not momentary and inadvertent, but extended throughout a lengthy hearing after explicit refusal by his attorney to waive it. Such a blatant violation of Children's Rule 12(c) (1) requires reversal. In a case of this sort, we will not weigh the possibility of prejudice as we did in Noffke, but will presume it as we did in Speidel. We need not conjure up possibilities of prejudice. Preservation of the fundamental right to be present against clear denials of it should not depend on the imaginative abilities of appellate judges. Children's Rule 12(c) (1) was broken in a clear and substantial manner despite counsel's explicit stated refusal to waive his client's right. That is enough to require reversal.

## CROSS–EXAMINATION OF JOSEPH WANT.

 The only evidence that RLR sold the tablet allegedly containing LSD was testimony by a secret informer of the police named Joseph Want. Want's credibility was essential to the state's case. R LR's attorney attempted to ask Want on cross-examination how his employment with the police had come about and how

93. 438 P.2d 712 (Alaska 1968).

94. 440 P.2d 405, 417 (Alaska 1968), cert. denied, 393 U.S. 1120, 89 S.Ct. 996, 22 L.Ed.2d 125 (1969).

95. 460 P.2d 77 (Alaska 1969).

96. Id. at 84 (footnote omitted).

97. Id. at 84.

98. 372 P.2d 785 (Alaska 1962).

99. United States v. Crutcher, 405 F.2d 239 (2d Cir. 1968), cert. denied, 394 U.S. 908, 89 S.Ct. 1018, 22 L.Ed.2d 219 (1969). See generally 3 C. Wright, Federal Practice & Procedure sec. 721 (1969). The stringency of the test arises from Fifth and Sixth Amendment implications.

often he had acted as a police secret informer, but the court sustained on grounds of irrelevance objections to these questions. The court offered to permit RLR's attorney to ask Want if he was paid by the police, but counsel chose not to ask this question. Appellant argues that the court abused its discretion in so limiting cross-examination because the unpermitted questions were relevant to explore bias, and the permitted question was not adequate to do so. Since we reverse the adjudication of delinquency because of RLR's absence from the Gowans hearing, we could avoid this issue but the likelihood of recurrence of the issue on retrial and the frequency of appeals of limitations on cross-examinations of police informers suggest that judicial economy militates in favor of ruling on the issue to avoid future errors.

■ We held in Lewis v. State [100] that one test of whether the trial court abused its discretion in ruling on the admissibility of evidence is whether the reasons given for the exercise of discretion are clearly untenable or unreasonable. In the case at at bar, the reason given was irrelevance, clearly an untenable ground since the questions asked could have shown whether Want was biased. Had Want been required to show how his employment came about, he might have been shown to have an incentive to bring about RLR's conviction in order to secure leniency for himself with respect to some past crime, as in Whitton v. State.[101] Limiting RLR's attorney to asking Want if he was paid to act as an informer unduly restricted cross-examination, since money is not the only inducement which might have been offered to Want. "[G]reat liberality should be given defense counsel in cross-examination of a prosecution witness with respect to his motive for testifying." [102] Cross-examination to show bias because of expectation of immunity from prosecution is one of the safeguards essential to a fair trial,[103] and undue limitation on such cross-examination is reversible error without any need for a showing of prejudice. The trial court committed reversible error in unduly limiting cross-examination of Joseph Want.

## FINDINGS OF FACT

■ Children's Rule 21(b) (2), in effect at the time of RLR's adjudication, required that a judgment of delinquency be "based upon and accompanied by written findings of fact." This provision is unchanged in the recent amendments to Children's Rule 21. Children's Rule 22(d) required that "[i]n all orders of disposition * * * the court shall provide written findings of fact supporting the disposition ordered." The trial court provided no written findings of fact for either the adjudication or disposition.

The trial court erred. Findings of fact are extremely important for facilitating review by this court, annual review of children's court orders under Children's Rule 28, evaluation of the child's acts during incarceration or probation for purposes of choosing rehabilitative techniques, evaluation of children's records for purposes of sentencing on subsequent offenses, and perhaps most important, for requiring the trial judge carefully to examine every element of the case before adjudicating or sentencing.[104] Judge Frank said:

The correct finding, as near as may be, of the facts of a law suit is fully as important as the application of the correct legal rules to the facts as found. An impeccably 'right' legal rule applied to the 'wrong' facts yields a decision which is as faulty as one which results from the

100. 469 P.2d 689, 695 (Alaska 1970).

101. 479 P.2d 302, 316–318 (Alaska 1970).

102. State v. Figueroa, 98 Ariz. 146, 402 P.2d 567, 569 (1965). See also People v. Soto, 64 Ill.App.2d 94, 212 N.E.2d 353 (1965).

103. Alford v. United States, 282 U.S. 687, 692, 51 S.Ct. 218, 219, 75 L.Ed. 624, 628 (1931).

104. Merrill v. Merrill, 368 P.2d 546, 548 (Alaska 1962).

application of the 'wrong' legal rule to the 'right' facts. * * * Chief Justice Hughes once remarked, 'An unscrupulous administrator might be tempted to say "Let me find the facts for the people of my country, and I care little who lays down the general principles."' * * *

It is sometimes said that the requirement that the trial judge file findings of fact is for the convenience of the upper courts. While it does serve that end, it has a far more important purpose—that of evoking care on the part of the trial judge in ascertaining the facts. For, as every judge knows, to set down in precise words the facts as he finds them is the best way to avoid carelessness in the discharge of that duty: Often a strong impression that, on the basis of the evidence, the facts are thus-and-so gives way when it comes to expressing that impression on paper.[105] (footnotes omitted).

## GENERALITY OF THE DISPOSITION

At the disposition hearing, RLR's attorney and the probation officer recommended that RLR be put to work on a ranch near Fairbanks. The judge indicated agreement. The disposition order, however, did not specify this alternative. It said in relevant part:

It is hereby ordered that the Department of Health and Welfare, Division of Corrections be given custody of the above-named minor child for an indeterminate period of time not to exceed minor child's 21st birthday;

It is further ordered that the Commissioner of Health and Welfare or his designee shall have authority to place the above-named minor in a suitable foster home, group home, detention home, or other suitable facility designated by the Commissioner of Health and Welfare or his designee without further application to this court.

Appellant argues that this order was overly broad under AS 47.10.080(b). Appellee does not attempt to defend the breadth of the order, but contends that any error was harmless and the matter is moot.

Since the record does not show what was done with RLR by the Department of Health and Welfare, we cannot treat the error as harmless. We do not know whether RLR was put to work on the ranch as the judge wished.

 Appellee's mootness argument is based on an order by the superior court dated July 14, 1970, releasing RLR from the custody of the Department of Health and Welfare. We have on our own motion supplemented the record to include this order under Supreme Court Rule 9(h). Errors in juvenile dispositions tend to be "capable of repetition, yet evading review"[106] if dispositions are thereafter deemed moot, because juvenile sentences very often do not last as long as the appellate process; therefore this issue falls within the exception of the mootness doctrine noted in Matter of G.M.B., 483 P.2d 1006 (Alaska 1971). An overbroad disposition order may subject a child to harmful collateral consequences by implying to later sentencing judges or others that his misconduct was more serious than a narrower order would have suggested, so a finding of mootness would be inappropriate under E. J. v. State, 471 P.2d 367 (Alaska 1970). Our mootness doctrine, therefore, is a matter of judicial policy, not constitutional law.

 At the time the disposition order was signed, AS 47.10.080(b) provided that:[107]

---

105. United States v. Forness, 125 F.2d 928, 942 (2d Cir.), cert. denied, City of Salamanca v. United States, 316 U.S. 694, 62 S.Ct. 1293, 86 L.Ed. 1764 (1942). Fairbanks Builders, Inc. v. Morton De-Lima, Inc., 483 P.2d 194 (Alaska 1971).

106. Southern Pac. Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310, 316 (1911).

107. The subsection has since been altered, but the amendments do not affect the language set forth. SLA 1970, ch. 245 secs. 12 and 13.

If the court finds that the minor is delinquent, it shall

(1) order the minor committed to the Department of Health and Welfare for an indeterminate period of time * * * and may direct the minor's placement in a juvenile correctional school, detention home, or detention facility designated by the department; the minor may be released from placement or detention and placed on probation on order of the court; or

(2) order the minor placed on probation, to be supervised by the department, and release him to his parents, guardian, or a suitable person * * *.

Appellant argues that the word "or" between subsections (1) and (2) implies that the court must choose between commitment to the Department of Health and Welfare and probation, and may not delegate the choice to the Department of Health and Welfare. This is a correct textual analysis, especially in light of the provision in subsection (1) for subsequent court order for probation following placement or detention. The legislature has clearly indicated its intent to place this choice in the hands of the court. The order questioned, however, does not leave the department free to place RLR on probation, so it does not violate the statute so construed.

▆▆ The legislature uses the term "may" rather than "shall" in the portion of subsection (1) providing that the court "may direct the minor's placement in a juvenile correctional school, detention home, or detention facility designated by the department." This means that, so far as the legislature is concerned, the court has discretion whether to specify the institution in which the minor is to be placed. Appellant has not argued that the court abused its discretion by failing so to specify in this case. Since the briefs do not cite or discuss the additional requirements of Children's Rule 22(f) and we reverse on other grounds, we do not think it desirable to discuss the impact of that provision.[108]

## STANDARD OF PROOF

At the time RLR was adjudicated a delinquent, Children's Rule 21(a) provided that delinquency was to be proved by a preponderance of the evidence. Subsequently, the Supreme Court of the United States held in In re Winship [109] that under the Due Process Clause of the Fourteenth Amendment this standard of proof was unconstitutional; that delinquency must be proved beyond a reasonable doubt. RLR argues for reversal on the ground that the preponderance of the evidence burden was applied in his case.

Since the matter must be reversed on other grounds, we find it unnecessary to reach this issue. Children's Rule 21(a) has been amended to provide for proof beyond a reasonable doubt if a child is charged with any act which may result in his incarceration.

The superior court's adjudicative and dispositive orders are vacated and reversed, and the matter remanded for appropriate proceedings.

108. Rules of Children's Procedure 22(f) provides:
 *Terms, Conditions, Duration of Placement.* Every order of the court placing the physical custody of the juvenile in any person or agency other than his parent, guardian, or custodian shall specifically state the terms, conditions, and duration of such placement.

109. 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed. 2d 368 (1970).