## CIRCUIT COURT OF FREDERICK COUNTY

Commonwealth of Virginia

v.

M. C.

February 8, 1972

By JUDGE ROBERT K. WOLTZ

This is an appeal to this court in its jurisdiction as a juvenile court from the Regional Juvenile and Domestic Relations Court for Frederick County taken by the juvenile as a result of the actions of the Regional Court.

June 14, 1971, a petition was filed alleging that on June 9th, the juvenile unlawfully ill treated and maimed a cat, referring to § 18.1-216. After preliminary proceedings, an adjudicatory hearing was had on July 6th. From the stipulation of counsel in this appeal, it appears that the principal witness against the juvenile was the owner of the cat, which had subsequently died, and the evidence showed that the juvenile had admitted to the owner as well as to the dog warden shooting the cat with a BB air rifle. The juvenile and both his parents also testified. The Regional Court found the juvenile innocent on the basis he had a right to protect his parents' property and the birds on it.

Within thirty days pursuant to § 16.1-214, that court granted a rehearing for good cause shown, such cause being that the cat owner complained that several witnesses she desired to be present had not been summoned nor appeared. The juvenile judge granting the motion for rehearing disqualified himself, and a judge specially appointed reheard the case on August 5th. At the rehearing, the cat owner and the juvenile and his parents again testified, but

there was the additional testimony of a veterinarian, the dog warden, and two neighborhood children.

The stipulation asserts that the testimony of additional witnesses corroborated the facts testified to at the first hearing and that there was no conflict at the second hearing with any evidence introduced at the first. (Though it is not clear from the stipulation, a written statement of the juvenile was introduced either at the first or at both hearings.) The Regional Court then found the juvenile "not innocent" and imposed certain sanctions.

Prior to the rehearing, the juvenile filed a plea of autrefois acquit which was denied, and he has reasserted that plea in this court, thus raising the issue of double jeopardy as a defense available to juveniles in juvenile proceedings.

The first juvenile statute was adopted in Illinois in the last year of the last century. Nearly all, if not all, American Jurisdictions have followed that lead in endeavoring to embody benevolent social theory respecting children in statutory form. Consonant with that endeavor, in this Commonwealth, the juvenile law by its terms "shall be construed liberally and as remedial in character; and the powers hereby conferred are intended to be general to effect the beneficial purposes herein set forth. It is the intention of this law that in all proceedings concerning the disposition, custody, or control of children coming within the provisions hereof, the court shall proceed upon the theory that the welfare of the child is the paramount concern of the state, and to the end this humane purpose may be attained, the judge shall possess all necessary and incidental powers and authority, whether legal or equitable in nature." § 16.1-140, Code of Virginia (1950). For example, no adjudication is considered a conviction and the juvenile is not denominated a criminal and does not suffer disabilities which would ordinarily result from conviction. § 16.1-179, Code.

The juvenile statutes are protective, not penal in nature and are designed for the general protection of society and the specific protection of the child to save him from "evil tendencies and bad surroundings" and to provide for his proper care and training. *Jones v. Commonwealth*, 185 Va. 335 (1946). As is true in most

jurisdictions, this case explicitly holds that juvenile proceedings are "civil" in nature and not "criminal."

Though termed civil cases, juvenile cases involving delinquency carry criminal overtones and implications.[1] The great diversity among individual juveniles, the extensive variety and degrees of seriousness of delinquencies necessarily demand a juvenile code, despite its beneficent intent, with sanctions which at least smack of the criminal if juvenile proceedings in the more extreme situations with which they must deal are to be more than idle exercises.[2] *Jones v. Commonwealth, supra*, takes cognizance of the criminal overtones, despite the "civil" appellation, by requiring a standard of proof beyond a reasonable doubt in delinquency proceedings.

It was nearly a half century after enactment of the first juvenile code before the U. S. Supreme Court addressed itself to the constitutional problems raised by juvenile cases.[3] More recently there have been several pronouncements by that court on a variety of such problems,[4] though none on double jeopardy. These holdings enunciate a due process standard of, albeit rather vague, "fundamental fairness," particularly with regard to "fact-finding procedures," for juvenile proceedings. *McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S. Ct. 1976 (1971).

---

[1] E.g., detention is permissible and can take the form of commitment to corrective institutions, Section 16.1-178; and such detention can be of considerable length as it may extend through the minority of the juvenile.

[2] Perhaps to avoid some of the possible idle exercises of jurisdiction over delinquencies, one of the later juvenile amendments (Section 16.1-177.1), enacted 1956) under certain circumstances permits a child fourteen or over who would be a misdemeanant if an adult to receive the penalties which could be imposed upon a misdemeanant adult. This sanction is essentially a criminal one.

[3] Haley v. Ohio, 332 U.S. 596, 92 L. Ed. 224 (1948).

[4] The format of those cases, noted below, is the measurement of specific juvenile procedures against the standard of due process under the Federal Constitution.

The anomaly of juvenile delinquency proceedings[5] has led that court generally to see the civil-criminal dichotomy as an oversimplification, to assert that the Fourteenth Amendment and Bill of Rights are not for adults alone, and to deny that the civil designation of juvenile cases and the beneficent intent of juvenile laws can be used as a means of withholding from the juvenile offender basic due process requirements. An outline of specific holdings is footnoted.[6] From that it becomes apparent

[5] The lumping of all forms of juvenile proceedings, e.g., delinquency, adult offenses against juveniles, neglect, dependency, custody, etc., together in our statutes with little delineation and discrimination among them as to procedure, disposition and the like adds further anomalies and creates confusions and ambiguities, effective sorely to tax and try the legal mind.

[6] Coerced confessions -- due process forbids. Haley v. Ohio, 332 U.S. 596, 92 L. Ed. 224 (1948), and Gallegos v. Colorado, 370 U.S. 49, 8 L. Ed. 2d 325 (1962).

Notice of charges -- due process requires notice adequate to a civil or criminal proceeding: timely, written, containing specification of charge or factual allegations. In re Gault, 387 U.S. 1, 18 L. Ed. 2d 527 (1967).

Right to counsel -- due process requires (where the result may be commitment to an institution or a curtailment of freedom) informing parents or the child of the right to counsel, retained or appointed. Ibid.

Confrontation and Cross Examination -- due process requires these rights to be afforded and, absent a valid confession, a finding of delinquency will not stand absent sworn testimony subjected to opportunity for cross examination. Ibid.

Self-incrimination -- due process affords the right to the privilege against self-incrimination, and the same requirements apply in juvenile as in adult cases with respect to Confessions and Admissions. Ibid. (Special problems as to waiver respecting self-incrimination, confessions and admissions are involved in juvenile cases, such as the presence of counsel, the presence and competence of parents, the age and condition of the juvenile, are pointed out by this decision. It declined to rule on the questions of the right to juvenile appellate review and to transcript of the hearing.)

Proof beyond a reasonable doubt -- due process requires this at the adjudicatory stage as to every fact necessary to constitute the "crime" charged, as a prerequisite to "conviction." In re Winship, 397 U.S. 358, 25 L. Ed. 2d 368 (1970). See Jones v. Commonwealth, supra, establishing this standard in this jurisdiction nearly a quarter century before.

Trial by jury at the adjudicatory stage -- due process does not require.

there is no "automatic congruence" between procedural requirements of due process in criminal cases and juvenile cases. *In re Winship*, 397 U.S. 358, 25 L. Ed. 2d 368 (1970), Harlan, J., concurring.

The juvenile appellant here seeks by his plea of autrefois acquit a determination that due process for juveniles affords constitutional protection against double jeopardy. The rehearing in the court below was ostensibly in pursuance of the provisions of § 16.1-214. The juvenile in effect asks a determination that the rehearing provisions of that section are unconstitutional. In my view, regardless of the guidance and inferences which may be gathered from extant U. S. Supreme Court decisions as to what a proper application of due process *vis-a-vis* presumed juvenile double jeopardy, such a broad and extreme finding is not necessary to resolve this case.

An examination of § 16.1-214[7] reveals that it deals

---

McKeiver v. Pennsylvania, 403 U.S. 528, 91 S. Ct. 1976 (1971). (This case notes a juvenile appeal on the ground of denial of jury trial had been dismissed in DeBacker v. Brainard, 396 U.S. 28, 24 L. Ed. 2d 148 (1969), as inappropriate because the trial was prior to the important jury decisions of Bloom v. Illinois and Duncan v. Louisiana, 391 U.S. 145, 20 L. Ed. 2d 491 and 522 (1968), and they were made prospective only by DeStefano v. Woods, 392 U.S. 631, 20 L. Ed. 2d 1308 (1968). McKeiver, the latest U. S. Supreme Court decision on due process for juveniles, takes note of all the other cases of that court cited in this footnote.)

Waiver of jurisdiction by juvenile to criminal court -- constitutionally permissible if the procedural steps involved meet the basic requirements of due process, "fairness" being a necessity in juvenile proceedings. Kent v. U.S., 383 U.S. 541, 16 L. Ed. 2d 84 (1966). While not passing on the points the court mentioned, it had been held that a juvenile was not entitled to bail, indictment by grant jury, speedy and public trial, nor (the opinion antedating McKeiver and Gault) trial by jury, immunity against self-incrimination, confrontation, nor, in some jurisdictions, counsel.

[7] "Jurisdiction of appeals; procedure -- From any final order or judgment of the juvenile court affecting the rights or interests of any person under the age of eighteen years coming within its jurisdiction, an appeal may be taken within ten days by any person aggrieved to the circuit, corporation, or hustings court having equity jurisdiction of such city or county. From any final order or judgment of the court affecting the rights of interests of any person of the age

principally if not exclusively with the right of appeal from the juvenile court, perfecting the right and the procedure on appellate hearing. The principles of statutory construction applied to this section make highly doubtful that it is the source of any right on the part of the juvenile court to rehear.[8]

However that may be, statutes are to be construed as far as reasonably possible so that they are constitutionally inoffensive. A basic constitutional requirement is notice to one of a proceeding or step therein to a party whose rights may be affected thereby; at least where there is no constitutionally excusable reason for lack of notice. For example, extreme emergency permitting the grant *ex parte* of a temporary injunction, or grant of adoption when the unknown whereabouts of a parent make personal

---

of eighteen years or over, coming within its jurisdiction, an appeal may be taken within ten days by the person aggrieved to the circuit, corporation, or hustings court having jurisdiction over such city or county. Upon receipt of notice of such appeal, the juvenile court shall forthwith transmit to the Commonwealth's attorney of such circuit, corporation, or hustings court a report incorporating the results of the investigation required in Section 16.1-164, which shall be confidential in nature and made available only to the court and the attorney for the defendant after the guilty or innocence of the accused has been determined. After final determination of the case, the report and all copies thereof shall be forthwith returned to such juvenile court. Provided, however, that in either case, the appeal may be withdrawn by the person taking same at any time before the appeal papers shall have been actually filed in the higher court, and thereafter with the consent of the judge of that court; and provided further, that in any case, the judge may grant a rehearing within thirty days upon good cause shown after due notice to interested parties. Proceedings in juvenile cases in such courts shall conform to the equity practice where evidence is taken ore tenus; provided, however, that an issue out of chancery may be had as a matter of right upon the request of either."

[8] Consider the anomaly of a final judgment in the juvenile court, a timely appeal to a court of record which determines the case by final judgment prior to the expiration of thirty days from the date of the juvenile court judgment, and a rehearing also within the thirty-day period granted by the juvenile court. Further, the only judge mentioned in reference to rehearing is the "judge of that court" which in the context refers to the court of record.

notice impossible and published notice impractical for reasons of policy.

In this case, while the aggrieved party appeared and applied for a rehearing, it was granted without notice of the application to the juvenile and without his appearance or opportunity to appear in opposition to its allowance. The juvenile and his parents received notice of the scheduled rehearing, but when they did, the grant of a rehearing was a *fair accompli*. Consistent with constitutional requirements for notice and with the principle of statutory construction so as to avoid constitutional invalidity, the statute under the facts of this case made notice to the juvenile or his parents necessary as a prerequisite to the grant of the rehearing.

Notice merely of the rehearing itself does not satisfy the statutory requirement mentioned. The law generally is somewhat parsimonious in allowing rehearings and strict in the requirements therefor. As a consequence, they are rarities. Policy, constitutionality and principles of construction as applied to this statute do not permit an *ex parte* grant of such an unsettling thing as a rehearing where the result might be the imposition of restraints on one's liberty.

The rehearing being the product of an infirm grant thereof, was in legal contemplation unauthorized and so its result a nullity. That being so, it is voided and the original judgment of the juvenile court is its final judgment.[9]

Section 16.1-214 clearly indicates that the trial of a juvenile appeal to a court of record is one *de novo*. This being true how can this court go into matters of procedure in that court? This court can as a preliminary to its further proceedings and to determine if its further proceedings are required, examine into procedures of that court to resolve whether the judgment appealed from is

---

[9] It is unnecessary and probably beyond the scope of a hearing de novo to go into the question of whether the showing of good cause required by the statute as a prerequisite to grant of rehearing was met on the basis of the absence at the first hearing of known and available witnesses whose testimony at the rehearing proved to be only corroborative and cumulative. See generally 16 M.J., Rehearing, sects. 4 et seq.

a constitutionally valid judgment at all in the face of that court's prior judgment in the matter. Otherwise, the right of appeal in such a situation would be largely vitiated and become more shadow than substance.