Don RAINES, Petitioner-Appellant,

v.

STATE OF ALABAMA,
Respondent-Appellee.

No. 76–2974.

United States Court of Appeals,
Fifth Circuit.

May 20, 1977.

Rehearing Denied July 18, 1977.

T. J. Carnes, Albertville, Ala. (Court-appointed), for petitioner-appellant.

William J. Baxley, Atty. Gen., Montgomery, Ala., Barry V. Hutner, Asst. Atty. Gen., Birmingham, Ala., for respondent-appellee.

Before WISDOM, CLARK and RONEY, Circuit Judges.

WISDOM, Circuit Judge:

I.

This appeal from the denial of a habeas petition presents important constitutional questions concerning Alabama's Youthful Offender Act.[1]

The appellant, Don Raines, was convicted in the Circuit Court of Marshall County, Alabama, of having unlawfully sold a controlled substance, in this case marijuana, a felony punishable by 15 years imprisonment under Alabama law, Title 22, § 258(47) Code of Alabama, 1940 (Recompiled 1958). Because of his age, Raines was eligible for treatment under Alabama's Youthful Offender Act. The circuit judge at arraignment explained the provisions of the Act to him and offered him the opportunity to request such treatment.[2] Raines refused to

---

1. Act No. 335, approved Feb. 10, 1972, Tit. 15 § 266(1)–(6), Code of Alabama.

2. Title 15, § 266(1):

   *Investigation by court; consent of minor to examination and trial without a jury; arraignment as a youth offender*—A person charged with a crime which was committed in his minority but was not disposed of in juvenile court in which involves moral turpitude or is subject to a sentence .of commitment for one year or more shall—and, if charged with a lesser crime, may—be investigated and examined by the court to determine whether he should be tried as a youthful offender, *provided he consents to such*

   *examination and trial without a jury where trial by jury would otherwise be available to him.* If the defendant consents and the court so decides, no further action shall be taken on the indictment or information unless otherwise ordered by the court as herein provided. After such investigation and examination, the court in its discretion may direct that the defendant be arraigned as a youthful offender, and no further action shall be taken on the indictment or information; or the court may decide that the defendant shall not be arraigned as a youthful offender, whereupon the indictment or information shall be deemed filed. (Emphasis supplied.)

waive trial by jury but insisted on being accorded the benefits available under the statute. The court denied this request and ordered that he be tried as an adult. After trial by jury he was convicted and sentenced to three years in the state penitentiary. The conviction was affirmed in the Alabama Court of Criminal Appeals, 1974, 55 Ala.App. 588, 317 So.2d 555, in the Alabama Supreme Court, 1975, 294 Ala. 360, 317 So.2d 559, and in the federal district court on petition for a writ of habeas corpus. Each court held that the jury waiver provision in the Alabama Youthful Offender Act did not offend constitutional guarantees. We affirm.[3]

### II.

The Alabama statute provides that a defendant between the ages of 16 and 21 who is accorded the status of youthful offender shall be tried before a judge without a jury at separate court sessions from those at which adult criminals are charged. Title 15, § 266(2). Upon conviction as a youthful offender the court may impose various sentences the maximum of which is a three-year commitment to the custody of the Director of the Department of Correction.[4] A person adjudged a youthful offender is not subject to disqualification from public office or public employment, nor does he forfeit any right or privilege, including eligibility to receive any license granted by the state government.[5] The court determination is whether the individual is a youthful offender, not whether he is a criminal. This determination is not the equivalent of a conviction, except that the adjudication may be used against him if he is later convicted of a crime. Furthermore, records of the proceedings are not open to public inspection except upon court order. Title 15, § 266(6).

The Alabama Act is modeled after the Model Sentencing Act published by the National Council on Crime and Delinquency, which was modeled after New York's Act that had been in effect since 1944. Although legislative history for Alabama's Act is unavailable, the drafters of the Model Act considered the youth offender proceeding to be non-criminal in nature. The committee comment noted, "[I]ts value lies in the opportunity it offers to select cases that merit avoidance of the criminal process and particularly the stigma of a criminal conviction." The legal counsel for the drafting committee has on at least two occasions asserted his belief that "a youthful offender adjudication under the Model Sentencing Act does not constitute a criminal conviction". Rubin, Federal Sentencing Problems in the Model Sentencing Act, 41 F.R.D. 506 (1966). These views, of course, did not bind the Alabama courts in their construction of the Act's purpose and the

3. The constitutionality of the examination process referred to in footnote 2 was discussed by the Alabama Supreme Court sua sponte. However, this question was not raised in the present appeal. We do not reach it now, nor do we decide whether Raines, who did not proceed under the Youthful Offender Act, would have standing to raise this question.

4. Title 15 § 266(4):
   *Disposition of youthful offender.*—If a person is adjudged a youthful offender and the underlying charge is a felony, the court shall (a) suspend the imposition or execution of sentence with or without probation, or (b) place the defendant on probation for a period not to exceed three years, or (c) impose a fine as provided by law for the offense with or without probation or commitment, or (d) commit the defendant to the custody of the Director of the Department of Correction for a term of three years or a lesser term. Where a sentence or fine is not otherwise authorized by law, in lieu of or in addition to any of the dispositions authorized in this paragraph the court may impose a fine of not more than $1,000. In imposing a fine the court may authorize its payments in installments. In placing a defendant on probation the court shall direct that he be placed under the supervision of the appropriate probation agency. If the underlying charge is a misdemeanor, a person adjudged a youthful offender may be given correctional treatment as now provided by law for such misdemeanor.
   It should be noted that the maximum sentence Raines could receive under the Youthful Offender Act was the three-year commitment to the Director of the Department of Correction, whereas, if tried as an adult he could have received fifteen years imprisonment.

5. Title 15 § 266(6), Code of Alabama.

nature of the consequences provided in the Act, although they provide useful insight into the Model Act after which Alabama's was patterned.

The Alabama Supreme Court's views as to the nature and purpose of the Act were consistent with those regarding the Model Act. That court said, "The Youthful Offender Act is intended to extricate persons below twenty-one years of age from the harshness of criminal prosecution and conviction. It is designed to provide them benefits of an informal, confidential, rehabilitative system." 317 So.2d at 561. It felt that the introduction of juries to the proceedings would create a "tension and overlap between that system [Youthful Offender] and the system of criminal adjudication; and that the application of jury trials in such cases would only serve to vitiate the purpose for which the youthful offender system was conceived and the interests which it was designed to protect". *Id.* at 562. The Act was conceived to protect youths "from the stigma and practical consequences of a conviction for a crime". *Id.* at 564. The Act, therefore, provides "for confidentiality in the proceedings and in the availability of the offender's records with regard to the adjudication". *Id.* The court, then, expressed its feeling that a jury trial would preclude meaningful confidentiality.

Although the Alabama court's characterization of the purpose and nature of the Act is not conclusive with respect to the constitutional inquiry in this case, see part IV of this opinion, it is the most persuasive statement on the legislative intent of the statute. The primary intent, then, was to prevent stigmatization and to afford youths a better opportunity for self improvement based on the notion that the probability of redemption for youths between 16 and 21 outweighed the need of society for harsh punishment of "criminal" behavior. This is not to say that punishment does not inhere in many youthful offender determinations. But punishment was not the Act's primary object.

### III.

The major question before us is whether a youthful offender has a constitutional right to a jury trial. This case flows naturally from the 1971 confluence of two major developments in constitutional law, the underpinnings of which provide guidance for our decision.

### A.

The first development was the application to the adjudicative stage of the juvenile process of the due process clause of the fourteenth amendment. In *Haley v. Ohio*, 1948, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224; *Gallegos v. Colorado*, 1962, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325, 87 A.L.R.2d 614, and *Kent v. United States*, 1966, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84, the Supreme Court pointed to the role due process would play in juvenile proceedings. Soon after these cases the extent of that role was given a broad scope by the landmark case of *In re Gault*, 1967, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527. There the Court held that in the adjudicative phase of the juvenile proceeding, due process applied and embraced at least adequate written notice, advice as to the right to counsel, retained or appointed, and the right to confrontation and cross-examination. The Court guaranteed the privilege against self-incrimination to the juvenile.

Then, in *Debacker v. Brainard*, 1963, 396 U.S. 28, 90 S.Ct. 163, 24 L.Ed.2d 148, the Court was presented with the question whether juveniles were constitutionally guaranteed a jury trial in juvenile proceedings. The Court concluded that the case was inappropriate for resolution of the jury trial issue, in light of the appellant's hearing having antedated *Duncan v. Louisiana*, 1968, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491, and *Bloom v. Illinois*, 1968, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522, see part IIIB of this opinion, and because *Duncan* and *Bloom* had been given only prospective application by *DeStefano v. Woods*, 1968, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308.

The Court expanded rights of juveniles. The Supreme Court held in 1970 that "the

due process clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged" and held that this standard was applicable to a juvenile proceeding. *In re Winship*, 1970, 397 U.S. 358, 368, 90 S.Ct. 1068, 25 L.Ed.2d 368. A reasonable inference from these rulings was that the full panoply of rights accorded an adult in a criminal trial would be accorded to a juvenile in a juvenile delinquency proceeding.

### B.

The second relevant development in the Supreme Court was its extension of the right to a jury trial. In *Duncan* the Court held that the sixth amendment right to a jury trial in serious criminal cases was a fundamental right protected by the fourteenth amendment that must be recognized in state criminal proceedings. Whether a crime was serious depended on whether the possible penalty exceeded six months imprisonment. *Baldwin v. New York*, 1970, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437.

There was also arguable support for the notion that the critical factor in determining the existence of a right to a jury trial was the loss of liberty and not the name given to a proceeding. *Bloom v. Illinois*, 1968, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522. In *Bloom*, the Court overruled a historic line of authority that had held an individual charged with criminal contempt was not entitled to a jury trial in state or federal courts. *See, e. g., Cheff v. Schnackenberg*, 1966, 384 U.S. 373, 86 S.Ct. 1523, 1537, 16 L.Ed.2d 629; *Green v. United States*, 1958, 356 U.S. 165, 78 S.Ct. 632, 2 L.Ed.2d 672. The traditional justification for denying a jury trial was that summary power was necessary to preserve the dignity and independence of the courts. 391 U.S. at 196, 88 S.Ct. 1477. This justification notwithstanding, the Court held that when significant loss of liberty is threatened, the right to a jury trial attaches. The contempt proceeding had traditionally been thought of as civil in nature,[6] but the Court felt that the charge of criminal contempt was sufficiently criminal in character to bring it within the sixth amendment. It is noteworthy that the Court in determining whether the crime was sufficiently serious to require a jury trial focused on the length of the sentence imposed and not on the nature of the crime. *Cf. United States v. Barnett*, 1964, 376 U.S. 681, 84 S.Ct. 984, 12 L.Ed.2d 23, *rehearing denied*, 377 U.S. 973, 84 S.Ct. 1642, 12 L.Ed.2d 742.

### C.

It would not have been an unreasonable conclusion, based on developments in delinquency proceedings and the broad holdings in *Duncan* and *Bloom*, that the jury trial right would attach in juvenile and related proceedings. Indeed, in a case heavily relied on by appellant here, *People v. Michael, A.C.*, 1970, 27 N.Y.2d 79, 313 N.Y.S.2d 695, 261 N.E.2d 620, the New York Court of Appeals held that its Youthful Offender Act, on which the Alabama Act was based, could not pass constitutional muster with a required waiver of jury trial in light of *Duncan* and the developments in delinquency proceedings. The court there stated that "if there could have been any doubt that persons tried as youthful offenders are entitled to the fundamental protections accorded defendants in ordinary criminal prosecutions, that doubt was dispelled by the Supreme Court's recent decision in *In re Winship* [citations omitted] dealing with juvenile delinquency proceedings". 313 N.Y. S.2d at 699, 261 N.E.2d at 623.

The New York court noted that the Supreme Court had not found in *Gault* or *Winship* the fact that juvenile proceedings were designed "to save the child", rather than to punish him, a sufficient justification for denial of fundamental rights to the juvenile. The court relied particularly on language in *Winship*, 397 U.S. at 365–66, 90 S.Ct. 1068:

> We made clear in that decision [Gault] that civil labels and good intentions do not themselves obviate the need for criminal due process safeguards in juvenile

---

6. *See* Juveniles and the Right to a Jury Trial, 15 Vill.L.Rev. 972, 984 (1970).

courts, for '[a] proceeding where the issue is whether the child will be found to be "delinquent" and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution. (Citations omitted.)

27 N.Y.2d at 85, 313 N.Y.S.2d at 699, 261 N.E.2d at 623. The New York court then proceeded to find the required jury waiver provision in its Youthful Offender Act unconstitutional.

Were the instant controversy presented to us at the time of *Michael*, we might have found that the preceding constitutional developments directed us to the conclusion reached in *Michael*. Later, however, the Supreme Court was presented directly with the question whether a constitutional right to a jury trial attaches at the adjudicative phase of a juvenile delinquency proceeding in *McKeiver v. Pennsylvania*, 1971, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647.

### D.

The holding in *McKeiver* was that there was no constitutional right to a jury trial in the adjudicative phase of a delinquency proceeding. The underpinnings of the decision are predictably unclear in light of the contrary developments that preceded the decision. The Court noted that reliability of the factfinding process [7] was safeguarded constitutionally and that "one cannot say that in our legal system the jury is a necessary component of accurate factfinding". 403 U.S. at 543, 91 S.Ct. at 1985. The Court found that a jury trial was not required in the juvenile proceedings, although it recognized that the juvenile system has not lived up to its idealistic hopes and that juvenile proceedings bore a close resemblance to an adult criminal proceeding. 403 U.S. at 544, 91 S.Ct. at 1976.

One of the difficulties with the decision, as Justice Harlan stated in his concurring opinion, 403 U.S. at 557, 91 S.Ct. at 1976, is the extent to which realities as opposed to theoretical objectives will determine the scope of constitutional rights accorded the

juvenile in delinquency proceedings. It is particularly noteworthy that in the Court's decision in *McKeiver* the theoretical objectives of the juvenile system played an important role. The realities attending the delinquency determination no longer held the force evident in *Gault* and *Winship*. The implications of the Court's reliance in *McKeiver* on theoretical purpose and state experimentation, 403 U.S. at 545–51, 91 S.Ct. at 1976, provide the basis for our decision.

### IV.

Admittedly, premise selection can be determinative in reaching a decision. If we begin analysis by assuming that *Duncan* states the general principle and that delinquency proceedings are sui generis, the decision reached might very well differ from an analysis that assumes *McKeiver* stated a principle applicable not only to traditional delinquency proceedings and, if logically extensible to our case, *Duncan* has no force. Although we are cognizant of the difficulties, we conclude that *McKeiver* states a broad principle binding this Court.

Our view is that the Supreme Court wanted to stop short of straitjacketing procedure in certain contexts even where there is a possibility of loss of liberty. Its rationale was that although the juvenile system presently may be a disappointment, the possibility still exists that the humanitarian and beneficial aims of the juvenile system may ultimately be realized. Although, as delinquency proceedings presently exist, a jury trial realistically would not "remake the juvenile proceeding into a fully adversary process", *id.* at 545, 91 S.Ct. at 1986, in that they are already adversary in nature, a jury trial might "put an effective end to what has been the *idealistic prospect* of an intimate, informal, protective proceeding". *Id.* (Emphasis added.)

The Supreme Court recognized the failure in the present system but stated astutely,

---

**7.** The privilege against self-incrimination was also guaranteed to juveniles in delinquency proceedings, although this right does not ap-

pear to relate to the reliability of the factfinding process.

So much depends on the availability of resources, on the interest and commitment of the public, on willingness to learn, and on understanding as to cause and effect and cure. In this field, as in so many others, one learns best by doing. We are reluctant to disallow the States to experiment further and to seek in new and different ways the elusive answers to the problems of the young, and we feel that we would be impeding that experimentation by imposing the jury trial. The States, indeed, must go forward. If, in its wisdom, any State feels the jury trial is desirable in all cases, or in certain kinds, there appears to be no impediment to its installing a system embracing that feature. That, however, is the State's privilege and not its obligation.

*Id.* at 547, 91 S.Ct. at 1987.

Commentators' criticisms of the reasoning and propriety of the Court's decision not to extend to juveniles the right to a jury trial in delinquency proceedings do not bear on our decision.[8] The relevant principle for us is that the potential for realizing the humanitarian rehabilitative goals inherent in the juvenile system should not be unduly inhibited by procedural obstacles.

Primary responsibility for juvenile problems and criminal behavior is in the states, and deference is desirable when the state makes sincere attempts to improve the plight of a special group acting in a socially undesirable or specifically in a "criminal" manner. Certainly where a jury trial is denied there are limitations on state experimentation. These limitations were hinted at in Justice White's concurrence in *McKeiver.* Justice White felt that the differences between criminal and juvenile courts were sufficiently great that a jury trial was not a necessary component of the delinquency proceeding, primarily since the juvenile system was designed to rehabilitate and not to punish, *id.* at 552, 91 S.Ct. at

1976. As Justice White stated, however, "[t]hey [the States] are also free, *if they extend criminal court safeguards to juvenile adjudications,* frankly to embrace condemnation, punishment, and deterrence as permissible and desirable attributes of the juvenile justice system". *Id.* at 553, 91 S.Ct. at 1990 (emphasis added). When the state's experimentation is simply a matter of relabeling without making significant substantive efforts to achieve purported beneficent purposes, or where, as Justice White points out, the state frankly embraces punishment as its goal, our deference is no longer appropriate.

In the particular context of this case, the Alabama Youthful Offender Act is humanistic, protective, and rehabilitative in purpose in providing an intermediate procedure for youths falling between juvenile and adult. Whether the state experiment conforms to our notions as to what procedure is best for youth offenders is a consideration of no relevance. The point is that the intent of the Act is to destigmatize, to rehabilitate, and to give youths another chance, vouchsafing them from some of the awful consequences attaching to a criminal conviction.

As noted, if the Youthful Offender Act did not make substantive attempts to achieve its purposes, we might find that a jury trial was required. The Act provides, however, for alternative more lenient sentencing and for determination as a youthful offender rather than as a criminal. It also precludes disqualification from public employment and promotes confidentiality of the youth offender determination. Based on the purposes of and substantive measures in the Act, we cannot say that our deference is unwarranted. Accordingly, we hold that the principles of *McKeiver* extend to the Alabama Youthful Offender Act and that no constitutional right to a jury trial

---

8. *See, e. g., Ketcham, McKeiver v. Pennsylvania*: The Last Word on Juvenile Court Adjudications, 57 Cornell L.Rev. 561 (1972); Constitutional Law: The Jury and the Juvenile Court, 24 Fla.L.Rev. 385 (1972); Constitutional Law—Jury Trials in Juvenile Court—Juveniles in Delinquency Proceedings not Constitutionally Guaranteed the Right to a Jury Trial, 24 Vand. L.Rev. 1281 (1971); Procedure—Due Process Analysis and the Right of Juveniles to Trial by Jury: *McKeiver v. Pennsylvania*, 50 N.L.Rev. 128 (1971); Juveniles and their Right to a Jury Trial, 15 Vill.L.Rev. 972 (1970).

attaches in the adjudicative phase of the youth offender determination.

The question is not and should not be whether proceedings under the Youthful Offender Act are a little more or a little less like adult proceedings or juvenile proceedings. It would be an endless and senseless task indeed to count on different sides of a ledger the number of characteristics in the Youthful Offender Act similar to those in juvenile acts and compare that number with the number bearing resemblance to a criminal proceeding. In this regard, it should be borne in mind that the Supreme Court itself did not address the particular statutes involved in *McKeiver* but instead addressed juvenile proceedings generally. The Pennsylvania juveniles argued in *McKeiver,* 403 U.S. at 541–42, 91 S.Ct. at 1984, that they were tried in proceedings "substantially similar to a criminal trial".[9] They referred to pretrial detention in buildings similar to adult prisons and in some cases in prisons themselves, an almost fully adversarial process, and potentially ultimate detention under majority in places such as those described by the Pennsylvania courts as "a maximum security prison for adjudged delinquents and youthful criminal offenders".[10] The Court did not address itself specifically to those contentions, however, presumably on the basis noted previously, that except in extreme cases, the state should be given discretion in setting up their special proceedings as to whether a jury trial should be provided.

Counting and comparing, then, is not the solution. Rather the principles embodied in federalism guide our determination. The states are entitled to leeway in designing procedures to deal with specialized problems, such as the problem of the youth offender, as to the propriety, *vel non*, of providing a jury trial in those proceedings. Unless we can say that these proceedings are either not special or special in name only, the state determination controls.

## V.

The appellant also contends that the requirement in the Alabama Act that the youth offender's constitutional right to a jury trial be waived to secure the Act's benefits is unconstitutional. As discussed above, see part IV, the youth offender has no constitutional right to a jury trial, but we address what remains of this contention. The argument is that the choice given to the juvenile between a criminal prosecution in which he is entitled constitutionally to a jury trial and youth offender proceedings without a jury trial imposes an impermissible burden on his right to a jury trial.

The appellant relies on *United States v. Jackson,* 1968, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138, and related cases.[11] They have no application in the present context. In *Jackson* the Supreme Court considered the provisions of the Federal Kidnapping Act authorizing the death penalty in aggravated kidnapping cases, only upon recommendation of a jury after a jury trial. If

**9.** The Pennsylvania juveniles' basic argument as stated at 403 U.S. 541–542, 91 S.Ct. at 1984, was that

".  .  . a delinquency proceeding in their state is initiated by a petition charging a penal code violation in the conclusory language of an indictment; that a juvenile detained prior to trial is held in a building substantially similar to an adult prison; that in Philadelphia juveniles over 16 are, in fact, held in cells of a prison; that counsel in the prosecution engage in plea bargaining; that motions to suppress are routinely heard and decided; that the usual rules of evidence are applied; that the customary common-law defenses are available; that the press is generally admitted in the Philadelphia juvenile courtroom; that members of the public enter the room; that arrest and prior record may

be reported by the press (from police sources, however rather than from the juvenile court records); that, once adjudged delinquent, a juvenile may be confined until his majority in what amounts to a prison (citations omitted),  .  .  . and that the stigma attached upon delinquency adjudication approximates that resulting from conviction in an adult criminal proceeding."

**10.** *In re Bethea,* 1969, 215 Pa.Super. 75, 76, 257 A.2d 368, 369.

**11.** *See, e. g., Griffin v. State of California,* 1965, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106; *Garrity v. New Jersey,* 1967, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562; *Brooks v. State of Tennessee,* 1972, 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358.

the defendant waived jury trial, however, and was tried by a judge, or pleaded guilty, the death penalty could not be imposed. The Court held that to require waiver of jury trial to escape the threat of a death penalty needlessly chilled and placed an impermissible burden on the exercises of the defendant's basic constitutional right to a jury trial. Accordingly, the Court struck down the death penalty provision of the Act.

The important point to note is that the defendant in *Jackson* was constitutionally entitled to a jury trial whether or not the death penalty could result from his conviction. *United States v. Torres,* 2 Cir. 1974, 500 F.2d 944, 949, in holding that the failure to provide a jury trial in the Federal Juvenile Delinquency Act was constitutional. The court in *Jackson* concluded that Congress could not have provided that the defendant be tried without a jury because of sixth amendment protections. The Kidnapping Act then imposed a burden on defendant's exercise of sixth amendment rights; the Act was structured to pressure him with the threat of this death penalty into waiving his constitutional right to a jury trial.

As we have held, the youth offender has no constitutional right to a jury trial, and therefore Raines had nothing to waive. It is true that he faced a difficult choice: to accept the benefits of the Youthful Offender Act or to be tried as an adult with the attendant right to a jury trial. Once he chose, however, to be treated under the Youthful Offender Act, he had no constitutional right to a jury trial. There was, therefore, no impermissible burden on constitutional rights. In sum, *Jackson* held since the defendant has a constitutional right to a jury trial whether the possible sentence is death or life imprisonment, a procedure whereby defendant is threatened with the death penalty unless he waives his

constitutional right to a jury trial places an impermissible burden on that right. In the youth offender context, although defendant has a constitutional right to a jury trial if tried as an adult, this is not true if tried as a youth offender. The Youthful Offender Act's failure to permit a jury trial is therefore a permissible legislative determination.

This position is buttressed by the cases dealing with the right to a jury trial in federal juvenile proceedings. These cases held in light of the fact that juveniles have no constitutional right to a jury trial,[12] *Jackson* is inapplicable, and therefore no impermissible burden exists. Here also no impermissible burden exists.

AFFIRMED.

---

**12.** The Sixth, Eighth, and Ninth Circuits, in holding that under *McKeiver* a jury trial is not constitutionally required in juvenile proceedings, apparently assumed, without discussing *Jackson,* that the provisions of the Act deeming consent to be a waiver of jury trial is also constitutionally valid. *Cotton v. United States,* 8 Cir. 1971, 446 F.2d 107; *United States v. King,* 6 Cir. 1973, 482 F.2d 454, *cert. denied,* 414 U.S. 1076, 94 S.Ct. 594, 38 L.Ed.2d 483; *United States v. Salcido-Medina,* 9 Cir., 1973, 483 F.2d 162, *cert. denied,* 414 U.S. 1070, 94 S.Ct. 582, 38 L.Ed.2d 476. *Cf. McKeiver.*